L. P. SWAIN v. C. S. JOHNSON, J. F. NOBLE and W. A. WEST.

(Filed 29 September, 1909.)

**Deeds and Conveyances — Breach of Contract — Action in Tort — Pleadings—Proof.**

An action cannot in general be maintained for inducing a third person to break his contract with the plaintiff, the consequence being only a broken contract, for which the party to the contract may have his remedy by suing upon it. To this rule there are two generally recognized exceptions discussed by BROWN, J.

APPEAL from *Cook, J.,* Spring Term, 1909, of CARTERET.

From a judgment of nonsuit the plaintiff appealed. The facts are sufficiently stated in the opinion of the Court.

*Moore & Dunn* and *Abernethy & Davis* for plaintiff.
*Thomas D. Warren* for defendant Noble.
*Simmons, Ward & Allen* for defendant Johnson.

BROWN, J. We deem it unnecessary to discuss the seventy exceptions set out in the record, as in our opinion the whole case may be reviewed in passing upon the correctness of his Honor's ruling in granting the motion to nonsuit.

The plaintiff contends that he contracted with the defendant Noble to purchase all the pine and juniper timber on certain lands belonging to the Cox heirs, said Noble being their attorney in fact, with power to sell the land; that the defendants West and Johnson conspired together and induced Noble to violate his contract with plaintiff by purchasing the lands from Noble for a corporation, the West Lumber Company, in which West and Johnson are interested. Wherefore, for such alleged tort, the plaintiff claims substantial damage.

The principle of law upon which plaintiff founds his right of action is thus stated in Comyn's Digest, Action on Case A: "In all cases where a man has a temporal loss or damage by the wrong of another, he may have an action upon the case to be repaired in damages. The intentional causing such loss to another, without justifiable cause, and with the malicious purpose to inflict it, is of itself a wrong."

This principle has been applied in some jurisdictions to the violation of contracts for personal service, and was so applied in this State in *Haskins v. Royster,* 70 N. C., 601, although by a divided court. It has been applied to the malicious enticing away of workmen; to the loss of a contract of marriage by means of a false and malicious letter; to maliciously enticing and in-

ducing a wife to remain away from her husband, and to mali ciously inducing an opera singer to abandon her contract; but we find no case in any court where it has ever been applied to breaches of contracts to convey title to property. It is true that in *Jones v. Stanly,* 76 N. C., 356, it was applied where the presi dent of a railroad company maliciously prevented his company from performing a contract of carriage of freight, and in that case *Judge Rodman* says "the same reasons cover every case where one person maliciously persuades another to break any contract with a third person." This is but a *dictum,* and in commenting on it the Supreme Court of Kentucky, in a well- considered opinion in *Chambers v. Baldwin,* 11 L. R. A., 547, says: "We have seen no other case where the doctrine is stated so broadly." This Kentucky authority, with the voluminous notes of the annotator and the numerous cases cited, support fully the text of *Judge Cooley,* that "an action cannot, in gen- eral, be maintained for inducing a third person to break his con- tract with the plaintiff; the consequences, after all, being only a broken contract, for which the party to the contract may have his remedy by suing upon it." Cooley on Torts, 497. To this rule there are but two generally recognized exceptions—one where servants and apprentices are induced from malicious motives to leave their master before the term of service expires, and the other arises where a person has been procured, *against his will* or contrary to his purpose, by coercion or deception of another, to break his contract. *Green v. Button,* 2 .Cromp. M. & R., 707; *Ashley v. Dixon,* 48 N. Y., 430. This is based upon the idea that a person has no right to be protected against com- petition, but he has a right to be free from malicious and wanton interference in his private affairs.

If disturbance or loss comes as the result of competition or the exercise of like rights by others, it is *damnum absque injuria. Walker v. Cronin,* 107 Mass., 564.

It is only where the contract would have been fulfilled but for the false and fraudulent representations of a third person that an action will lie against such third person. *Benton v. Pratt,* 2 Wend., 385, citing *Pasley v. Freeman,* 3 T. R., 51.

The case of *Ashley v. Dixon, supra,* is in every respect similar to the one under consideration. In that case the New York court holds: "If A has agreed to sell property to B, C may at any time before the title has passed induce A to sell it to him instead; and if not guilty of fraud or misrepresentation, he does not incur liability, and this is so, although C may have contracted to purchase the property of B. B cannot maintain an action upon the latter contract, as he cannot perform and

can only look to A for a breach of the former." This doctrine is supported by abundant authority. Cooley on Torts, *supra; Otis v. Raymond,* 3 Conn., 413; *Young v. Scovell,* 8 J. R., 25 N. Y.; *Johnson v. Hitchcock,* 15 J. R., 185; *Gallager v. Brunell,* 6 Cow., 347; *Hutchins v. Hutchins,* 7 Hill, 104.

Tested by these generally accepted principles, the plaintiff has entirely failed, for he does not allege, and there is not a shred of evidence to prove, that Noble was ready and willing to perform his alleged contract with plaintiff, but that he was prevented, against his will, from so doing by the false and fraudulent representations of West and Johnson, or either of them.

In fact, it is hard to discover in the record any evidence that at the time West is alleged to have purchased the timber the plaintiff had any subsisting contract with Noble. The latter had given plaintiff an option, but it had expired. Then Noble placed the deed with his attorney, Wooten, to be delivered in case plaintiff paid the purchase money in three days, as agreed, which the plaintiff failed to do.

Tested by the *dictum* of *Judge Rodman,* in *Jones v. Stanly, supra,* the plaintiff also fails, for under that authority, if followed, plaintiff must both allege and prove malice upon the part of West and Johnson, and he fails as to both.

The evidence does not disclose any illegal act committed by either West or Johnson, much less an evil one. The latter agreed to buy the timber from plaintiff, who then held an option on it, provided his attorney, Judge Shepherd, pronounced the title good. He examined it and pronounced it bad, and Johnson declined to purchase. After plaintiff had failed to take up the deed from Wooten and pay the price agreed upon between him and Noble, West purchased the timber from Noble and deposited the money to await the perfecting of the title.

It is very hard to discover in the evidence any moral, much less legal, wrong done the plaintiff by these defendants, or either of them. He lost the purchase of the timber, not by any fraudulent practices of West or Johnson, whereby Noble was prevented from selling to the plaintiff, but because he failed to pay Wooten the money for Noble and take the deed at the time agreed upon.

The judgment is

Affirmed.